[No. 5455.]
[No. 3125 C. A.]

### HARVEY ET AL. v. DENVER & RIO GRANDE RAILROAD COMPANY.

1. **Pleading — What Must Be Specially Pleaded — Payment** must be specially pleaded.—P. 262.

So of a release or written acquittance.—P. 264.

2. **Pleading**—A count in indebitatus assumpsit is admissible under the code.—P. 265.

3. **Evidence—Relevancy**—Evidence of either an express or implied contract may sustain a count in indebitatus assumpsit. —P. 265.

4. **Payment—Partial Payment in Full**—Where a demand is disputed and unliquidated, and part is offered in full of the total demand, its acceptance precludes an action for the residue.— P. 270.

5. **Release—Impeaching**—A release given in full of an unliquidated and disputed claim, upon receipt of part of what is demanded by the creditor, is not to be overthrown by evidence that there was no consideration therefor save the sum thereby acknowledged to have been paid.—Pp. 269-271.

*Error to Denver District Court.*
*Hon. John I. Mullins, Judge.*

Mr. THOMAS B. STUART· and Mr. CHARLES A. MURRAY, for plaintiffs in error.

Messrs. WOLCOTT, VAILE & WATERMAN, and Mr. E. N. CLARK, for defendant in error.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

The complaint in this case stated two causes of action.

The first cause of action alleged a balance of $564.04 due plaintiffs from defendant upon a written contract, entered into on the 10th day of September, 1901, for the construction of certain foundations, abutments, walls and stone work upon and along the line of defendant's railway.

The second cause of action alleged that between the 20th day of September, 1901, and the 7th day of March, 1902, plaintiffs rendered services and furnished appliances and materials to the defendant, at defendant's special instance and request, of the reasonable and agreed aggregate value of $3,330.90, setting forth in a bill of particulars, consisting of twenty-four items, the several amounts alleged to be due, aggregating the amount above stated.

It was further alleged that the amount had been due the plaintiffs from the defendant since the 7th day of March, 1902, and that the defendant had wholly failed and refused to pay the same, or any part thereof, although often requested so to do.

The demand was for a judgment for the total of the two amounts, to wit, $3,894.94.

The answer to the first cause of action admitted that on the 10th day of September, 1901, plaintiffs entered into a written contract with defendant whereby plaintiffs were to perform certain services and furnish materials and appliances, and that plaintiffs performed certain services and furnished materials under that contract and became entitled to and were paid a large sum of money therefor, and that plaintiffs, under the terms and conditions of said contract, became entitled to payment in the further sum of

$564.04, upon condition that plaintiffs would sign and deliver to defendant "a full and valid release and complete discharge of and from any and all claims and demands whatsoever for all matters growing out of or in any way connected with said contract"; and further alleged that it had never refused to pay said sum of money to plaintiffs, but had frequently offered the same upon the signing and delivery of the release and discharge above referred to, and that defendant was now ready and willing to pay the same upon the signing and delivery of such receipt; and to keep such tender good, that the defendant had deposited in court the sum of $564.04, payable to the order of plaintiffs upon the signing and delivery of the release and discharge provided for by the terms of the contract.

To the second cause of action the defendant answered, a general denial of each and every allegation thereof, except such as were expressly admitted, and for a second and further defense denied that any agent of defendant company had authority to request or procure the plaintiffs to render the services or furnish the materials referred to; denied that defendant requested or procured the plaintiffs to render such services or furnish such materials; denied that the plaintiffs rendered or furnished the services or materials, and alleged that on the 10th day of September, 1901, plaintiffs and defendant entered into a written contract for certain work in the construction of certain bridge abutments, subject to the covenants, conditions and limitations in said contract set forth, a copy of which contract was set forth *in haec verba* in the answer.

The answer further alleged that all services rendered and appliances and materials furnished defendant by the plaintiffs, as alleged in their second cause of action, if any such were rendered or fur-

nished, were rendered and furnished under and in accordance with the terms, conditions, covenants and agreements of said contract, and not otherwise, and that, under the terms and conditions of said contract there is due the plaintiffs the amount of money sued for in the first cause of action; that payment of said amount of money was conditional upon the execution and delivery by plaintiffs to defendant of a full and valid release and complete discharge of and from all claims and demands whatsoever growing out of, or in any way connected with, said contract, and that plaintiffs had failed and refused to execute and deliver to defendant such release and discharge.

A reply put in issue the allegations of new matter in the answer.

The trial was to the court and a jury.

Upon the conclusion of all the evidence offered, upon defendant's motion, the court directed the jury to return a verdict in favor of the plaintiffs for the sum of $564.04, being the amount sued for in the first cause of action, and admitted to be due by the answer.

The following facts are uncontroverted:

The only written contracts between the parties during the period of time covered by the matters in controversy herein, were the contracts of September 3 and September 10, 1901. Previous to the commencement of this suit, the balances due plaintiffs from defendant under these contracts were ascertained and determined by the parties; the balance due under the contract of September 3 does not appear from the evidence, but was included in the sum of $12,412.57, as shown by the receipt, release and discharge signed by plaintiffs dated April 21, 1902 (defendant's Exhibit 4 of the record). The balance due under the contract of September 10 was ascertained to be $564.04, as alleged in the complaint and

admitted by the answer. About March 7, 1902, the plaintiffs presented a claim and made a demand on defendant for some three thousand dollars, for work done near Pueblo and at Fountain. Under date, April 21, 1902, the plaintiffs executed and delivered to defendant a receipt, release, discharge and acquittance for $1,294.60, a voucher and a receipt for the same amount, and a receipt, release, discharge and acquittance for $12,412.57. (Exhibits 1, 2 and 4.)

Plaintiffs objected to the introduction in evidence of these exhibits, upon the ground that they had not been pleaded.

The answer to the second cause of action, hereinbefore outlined, was a general and specific denial of the allegations of the complaint, and a further answer to the effect, that if plaintiffs rendered the services and furnished the materials sued for, the same were rendered and furnished under the contract of September 10; and not otherwise, and that payment of the balance admitted to be due upon said contract was subject to the condition, that plaintiffs execute and deliver to defendant a full and valid release and complete discharge of all claims and demands whatsoever, ''and that said plaintiffs have failed and refused, and still fail and refuse, to execute and deliver to this defendant such release and discharge as aforesaid.''

Under this state of the pleadings defendant contends, that the complaint having alleged non-payment, proof of payment was admissible under the general issue raised by the answer, and authorities are cited in support of this position.

Whatever may be the rule in other jurisdictions, it is settled in this state that payment is an affirmative defense and must be specially pleaded.—*Esbensen v. Hover,* 3 Col. App. 467; *Perot v. Cooper,* 17

Colo. 80; *Thomas v. Carey,* 26 Colo. 485; *Florence O. & R. Co. v. First Nat. Bank,* 38 Colo. 119.

Exhibits 1 and 4, by their express terms stating, "This receipt, release, discharge and acquittance made and executed," etc., clearly indicate that they were something more than simple receipts evidencing payment. An examination of Exhibit 1, which was the one principally relied on to defeat a recovery in this action, shows that it was a release and an accord and satisfaction.

In *Alden v. Carpenter,* 7 Colo. 87, 91, it is said:

"In New York it is held that evidence of payment, release, accord and satisfaction, and such like defenses, is not admissible under a general denial, but must be specially pleaded, and this ruling is put upon the ground that the general denial, under the code, is wholly unlike the general issue at common law."

If a party intends to rely upon an accord and satisfaction, it should be set up as a defense in the answer.—*Berdell v. Bissell,* 6 Colo. 162, 164.

"In California it is held that a general denial puts in issue an allegation of nonpayment in the complaint. But in that state the averment of nonpayment seems to be essential, and without it there is no cause of action stated, so that a denial of that is a denial of a material allegation."—*Esbensen v. Hover,* 3 Col. App. 467, 468.

Notwithstanding this rule in California, with reference to a release and an accord and satisfaction, Mr. Justice Field, writing the opinion in *Coles v. Soulsby,* 21 Cal. 47, 51, said:

"In our practice, a denial, whether general or special, only puts in issue the allegations of the complaint. The difference between a general and special denial in this respect is only in the extent to which the allegations are traversed. New matter

must be specially pleaded; and whatever admits that a cause of action, as stated in the complaint, once existed, but at the same time avoids it—that is, shows that it has ceased to exist—is new matter. It is that matter which the defendant must affirmatively establish. Such are release, and accord and satisfaction. Defenses of this character must be distinctly set up in the answer, or evidence to establish them will be inadmissible.

"Under the codes and practice acts a release or discharge must be specially pleaded in order to be available, since it is an affirmative defense of new matter."—18 Enc. Pl. & Pr. 89.

No authorities have been cited, and we have found none, which hold contrary to the doctrine announced above, as to the necessity of pleading a release or an accord and satisfaction.

Under the above authorities, Exhibit 1, whether it be considered a simple receipt evidencing payment or a release or an accord and satisfaction, should have been pleaded to entitle it to admission in evidence.

Defendant contends that error was committed by the court in allowing one of the plaintiffs to testify, over the objection of defendant, in substance, that after the contract of September 3 had been signed, defendant's engineer stated that he wanted plaintiffs to prepare to get out a large quantity of crushed stone; that he wanted great quantities of riprap; that he wanted 50,000 cubic yards between that time and the following June, before the spring floods came; and that the introduction of this testimony and the written contracts constituted a variance which changed the issues presented by the pleadings from an action on an implied contract to an action on express contracts, thereby justifying

the admission of exhibits 1 and 2 under the new issue thus presented.

The complaint presented an *indebitatus assumpsit* on a *quantum meruit.*

In *Hockaday v. Co. Comrs.,* 1 Col. App. 362, 377, it is said:

"The action   *   *   *   was an action of *indebitatus assumpsit* at common law, and by the code the common-law remedy has not been restricted, but enlarged.   This action will lie for 'The breach of all parol or civil contracts, whether verbal or written, or express or implied, for the payment of money.'— 1 Chit. Pl. 112; Steph. Pl. 49; *Curtis v. Fiedler,* 2 Black. 461; *United States v. Russell,* 12 Wall. 623; *Town of Queensbury v. Culver,* 19 Wall. 83; *Barker v. Corey,* 15 Ohio 9."

The second cause of action stated in the complaint, was for services rendered and appliances and materials furnished to defendant at its special instance and request, and was broad enough to admit evidence of either an express or an implied contract. The court did not err in admitting the testimony, and its admission did not change the issues presented by the pleadings.

The error committed by the court in admitting Exhibits 1, 2 and 4, over the objection of plaintiffs, for the reasons stated, will necessitate a reversal of the judgment.

Plaintiffs say that error was committed in the ruling refusing to allow them, upon rebuttal, to prove that there was no consideration for the execution of the receipts and releases dated April 21, 1902, known as Exhibits 1, 2 and 4, other than the balance due on the contract of September 3, 1901.

A determination of the question thus presented involves an examination of these exhibits.

Exhibit 1   after reciting the execution, by the

parties thereto, of the contract of September 3, and other matters immaterial to this discussion, proceeds:

"WHEREAS, The said final payment has heretofore been made to the said parties of the first part, and a full release executed to the said party of the second part, as in said contract provided; and

"WHEREAS, It is now claimed by the said William Harvey and Benjamin Fisher Threewit that the said parties of the first part to said contract are justly entitled to additional compensation for extra and extraordinary services, and the furnishing of labor, materials, superintendence, etc., outside of the terms of said contract, and in addition to such extra and extraordinary services and the furnishing of labor, materials and superintendence heretofore paid for by the said railroad company, and receipted for by the said parties of the first part; and

"WHEREAS, The said railroad company denies any further legal liability to said parties of the first part, by reason of said contract or otherwise, but is, notwithstanding such non-liability and the execution of a full release heretofore by the said parties of the first part, willing to pay to the said parties of the first part the additional compensation herein referred to, upon the execution of this additional release by the said William Harvey and Benjamin Fisher Threewit;

"Now, THEREFORE, The said William Harvey and Benjamin Fisher Threewit do hereby acknowledge the receipt, at the hands of the said The Denver & Rio Grande Railroad Company, of the further sum of twelve hundred and ninety-four 60-100° dollars ($1,294.60), and that said amount is a full and final payment of all sums due or payable, or to become due or payable or claimable, by them under the terms of said contract, or on any account whatsoever, and of

all claims and demands of any and every character whatsoever for extra or extraordinary services or the furnishing of labor, materials, superintendence, etc., at any time and in any manner, and on any account whatsoever by them under the terms of said contract hereinbefore referred to, and outside of the terms of said contract, and including the performance of additional work or the furnishing of additional labor, materials, superintendence, etc., during the course of the execution of said contract, and all contracts and in any manner whatsoever.''

Exhibit 2, as found in the transcript of the record, appears to be an ''Auditor's Voucher'' upon a printed blank form, which sets forth that plaintiffs received of defendant the sum of twelve hundred ninety-four and 60-100 dollars ($1,294.60), ''in full payment, accord and satisfaction of all and all manner of claims and demands of any and every character whatsoever arising out of or predicated upon the doing of extra or additional work or furnishing of additional labor, materials and superintendence in connection with the carrying out and performance of said contract and the specifications in said contract,   *   *   *   and upon any and all other contracts between the parties named therein.'' The above language is repeated, in substance, several times in the instrument.

Exhibit 4, after reciting the execution by the parties thereto of the contract of September 3, 1901, as in Exhibit 1, proceeds:

''WHEREAS, The said contract has been duly performed except in respect to the execution and delivery of the aforesaid release and discharge,

''Now, THEREFORE, The said William Harvey and Benjamin Fisher Threewit do hereby acknowledge the receipt, at the hands of The Denver & Rio Grande Railroad Company, of the sum of twelve

thousand four hundred and twelve dollars and fifty-seven cents ($12,412.57), and that said sum is a full and final payment of all sums due or payable, or to become due and payable, under the terms of said contract," etc.

From the above excerpts it is apparent that Exhibit 4 is an instrument separate and distinct from Exhibits 1 and 2, and that it was executed pursuant to that requirement of the contract of September 3, to the effect that the plaintiffs, before receiving final payment, should sign and deliver to defendant "a full and valid release and discharge of and from any and all claims and demands whatsoever for all matters growing out of or in any way connected with this contract."

It is equally apparent that Exhibits 1 and 2 were executed by plaintiffs upon receipt from defendant of the sum of money therein stated, in full payment, accord and satisfaction of a demand or demands which they were making against defendant for extra work, services and materials, outside of the terms of said contract; that defendant disputed this claim, and denied legal liability thereon; that the claim or demand of plaintiffs was unliquidated, and that the amount paid and receipted for must have been arrived at by a composition.

This conclusion is fortified by the testimony of Mr. Harvey, to the effect that about March 7, 1902, plaintiffs presented a claim against defendant for about three thousand dollars.

Exhibits 1 and 2 are clear, unambiguous and intelligible, and require no extrinsic evidence to explain or elucidate any of their terms.

The standpoint of all parties to the transaction is manifest from the language employed in the several instruments, and no evidence is necessary to

explain the circumstances under which they were executed or the nature of the transactions involved.

It is not possible to believe that plaintiffs misunderstood the force, effect and import of the releases which they signed, or that they did not know that they thereby released, relinquished, satisfied and discharged, for the consideration therein named, all claims and demands whatsoever which they had against defendant growing out of any and all contracts and transactions previous to the date of the releases.

No authorities are necessary in support of the rule that extrinsic evidence is not admissible to either contradict, subtract from, add to or vary a written instrument.

For some purposes the consideration stated in a deed may be shown to be different from that expressed, but this cannot be done for the purpose of avoiding the deed or varying its effect.

No pretense is made that Exhibits 1 and 2 were procured by fraud, mistake or misrepresentation. The testimony sought to be introduced, as stated in the offer, was to prove "that there was no consideration whatever for the receipt and release dated April 21, 1902, offered in evidence by the defendant, other than the acknowledgment of payment of the balance due plaintiffs under the contract of September 3d, 1901."

In support of their contention counsel cite a number of authorities in support of the well-settled principle, that payment of a sum of money less than the full amount due upon an undisputed matured debt will not operate as a defense to a suit for the balance of the debt.

The authorities cited are not in point, for the reason that the evidence in this case, and Exhibits 1 and 2, conclusively show that the debt, claim or

demand, which is covered by such exhibits, was disputed and unliquidated.

This case comes within the rule announced by the courts of this state.

In *Rio Grande Co. v. Hobkirk*, 13 Col. App. 180, 182, the court said:

"It is always the law that where the sum in controversy is disputed and a party offers a fixed sum in satisfaction, attaches to the offer the condition that if taken at all it must be received in full settlement, it will operate as an accord, and the receipt of the money will be a satisfaction. Proof of the condition and the acceptance of the money in satisfaction must be clear. This is a familiar rule which has often been expressed and was plainly put in *Berdell et al. v. Bissell et al.*, 6 Colo. 162."

In *C., R. I. & P. Ry. Co. v. Mills*, 18 Col. App. 8, 11, it is said:

"It is laid down in the books in general terms that a receipt for money is only *prima facie* evidence of payment, and may be explained or contradicted by parol evidence. But the rule is applicable only to cases where the money is due and the amount is undisputed. If there is no disagreement as to the amount, a receipt for a less sum, in full of the entire demand, does not bind the creditor, because it is without consideration. * * * Neither is the rule applicable to the settlement of an unliquidated demand effected fairly, and with full knowledge of all the facts; and a receipt in full given upon such settlement is conclusive against the party giving it."

*Guldager v. Rockwell*, 14 Colo. 459, was a suit by a widow for damages for negligence in causing the death of her husband. The defendant pleaded accord and satisfaction, and in support of the plea produced a paper signed by the parties which, *inter alia*, recited that on the day of the date of the instru-

ment the parties ''had a full and final settlement,'' and then recited certain transactions and the payment to plaintiff by defendant of a sum of money, and concluded with the words, ''which is in full demands of every name and nature whatsoever from one party to the other.''   At page 465 the opinion proceeds:

''The paper in question being a contract entered into by plaintiff deliberately, and with full knowledge of her rights, being sufficient in its terms to comprehend the claim in question, having been entered into for the purpose of settling all matters of difference, and being so fully understood by both parties, it is clear that its effect cannot be avoided except upon the ground of fraud or mistake.''

The rule is thus stated in 1 Am. & Eng. Enc. 419:

''If the debt or claim is disputed or contingent at the time of payment, the payment, when accepted, of a part of the whole debt, is a good satisfaction. Where the claim settled is not a money demand, or, if so, is unliquidated, or if liquidated, is doubtful in fact or in law, any sum, however small, given and received in satisfaction of the demand, however large, will legally satisfy it.''   (Citing *Berdell v. Bissell*, 6 Colo. 162; *Union Pacific Railway Co. v. Anderson*, 11 Colo. 293, and a long list of cases.)

Plaintiffs further contend that Exhibit 1 is expressly limited by its language to the contract of September 3, 1901, and that the court misconstrued this instrument in applying it to the matters alleged as the basis of plaintiffs' second cause of action.

While it is true Exhibit 1 refers to the contract dated September 3, 1901, this reference is merely incidental and by way of recital, and it is clearly apparent from those portions of Exhibit 1 above quoted, that the particular matter recited, and which

was under the contemplation of the parties and intended to be satisfied, released and discharged, was the claim and demand of plaintiffs "for extra and extraordinary services and the furnishing of labor, materials, superintendence, etc., outside of the terms of said contract"; and it was such. matters which were satisfied, released and discharged by this "additional release."

The court committed no error in these rulings.

For the reason first above stated, the judgment must be reversed and the cause remanded, with directions to the court below to permit the parties to amend their pleadings as they may be advised.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE HELM concur.