## No. 15,089.

### FODERARO ET AL. *v.* GHIONE.

(142 P. [2d] 274)

Decided October 4, 1943.

Mr. I. E. SCHACHET, for plaintiffs in error.

Mr. SAM T. TAYLOR, for defendant in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS is an action to recover $247.56, alleged balance due on a contract, which originated in justice of the peace court in Huerfano county, in which plaintiff, defendant in error here, prevailed. On appeal, the case was tried to a jury in the county court of the same county a year later, where plaintiff, Ghione, again was awarded a judgment based upon the verdict of the jury in the same amount, $247.56. The case is now before us on writ of error and application for supersedeas, and we have elected to finally determine the matter on the application. Reference will be made to the parties as they appeared in the trial courts or by name.

Plaintiff, being a general contractor in Walsenburg, entered into a contract with John Foderaro under date of October 9, 1939, to build a tipple for the latter's "Strawberry Mine No. 2." The contract was as follows:

"Agreement between John Foderaro and E. Ghione to build tipple for Strawberry Mine No. 2.

"The owner is to furnish all material, all doors, all

chutes, ready to set. Have all necessary materials on ground.

"Owner will move all lumber from Broadhead Tressel No. 9 mine.

"Contractor is to take all lumber down with care and save all pieces. All bolts, nuts, washers are to be saved. Owner is to thread all bolts.

"Build tipple shown like plans and specifications.

"Build rock dump. Owner will furnish all screen ready to set.

"Owner will furnish things so that the contractor will lose no time.

"Contractor will set hoist.

"Payments are to be made every Saturday by 11 o'clock A.M. 80% for work done and 20% when job is finished. Job will start immediately and be finished in 3 weeks.

"Contractor will furnish all labor and tools for the sum of $900.00.

"Contractor is to furnish his own compensation."

Plans and specifications referred to in contract were drawn up by Douglass, Corey & Fisk, engineers of Walsenburg, and called for an estimated amount of 20,786 B.M. of lumber, as per their statement of October 7, 1939. Plaintiff claims some changes were requested by the defendant, John Foderaro, after work had been commenced amounting to $78, as a result of which, after adding service tax of $19.50, his total bill against Foderaro amounted to $997.56. Defendant, John Foderaro, paid $750 on the original contract, leaving the balance of $247.56 which is the subject of this action.

Five weeks after the tipple was finished it cracked and collapsed, and defendant claims that this breakage was because plaintiff's work was not performed in a workmanlike manner in that the rock used for the supports was not proper and was improperly placed. Defendant, John Foderaro, filed a counterclaim for damages in the amount of $300, upon which the judgment

was adverse to him in both trial courts. In support of the claim for additions, plaintiff introduced evidence showing that the amount of lumber actually used in the construction of the tipple amounted to 27,688 feet, as against the 20,786 feet, originally estimated.

There was evidence, including that of defendants' witness, Lopez, that the tipple broke because of too much weight on the timbers which had been supplied by defendant himself.

Defendants list thirty-seven specifications of error, and their counsel states: "Some of the points raised might not be sufficient of themselves, to constitute reversible error; however, as we have heretofore contended, a continuous repetition of same, or single small errors taken together with other errors of the same magnitude, might constitute error. However, we also contend that some of the points, each by itself, constitutes reversible ground." On some of the latter we now comment.

It should first be noted that the combination of three factors: 1. An inexperienced stenographic reporter who substituted for the regular court official; 2. the fact that neither plaintiff nor defendants were versed in the English language; and 3. that the testimony of several other witnesses was obtained through the use of an interpreter, has tended to make some of the record more or less unintelligible.

Points 27, 28 and 29, specified by plaintiffs in error, have to do with a tendered instruction embodying their theory of the case, which the court refused to give, and instructions Nos. 12 and 13, given by the court relate to modifications of the contract and its validity. Without entering into a detailed discussion of these points, a careful examination and consideration convinces us that they are without merit; consequently we hold that no prejudicial error resulted from the court's action on this phase of the case.

Defendants allege error in the admission in evi-

dence of Exhibit A, which was an estimate on the amount of lumber used on the tipple furnished shortly after its construction, by Messrs. Ritchey and Messer, and they rely upon *Engelbach v. Kellogg,* 65 Colo. 182, 176 Pac. 472, to support their contention that reversible error was committed. But in the Engelbach case the memorandum and copy of letter introduced were both written by the plaintiff himself and bore on the vital point in the case, namely: the amount of interest that was to be charged on a loan that plaintiff was to obtain for the defendant. We held that the documents were self-serving declarations and improperly admitted in evidence. In the instant case, however, the estimate of the amount of lumber involved in the construction of the tipple was made by two independent witnesses. Neither do we see error in the admission in evidence of Exhibit C (duplicate copy of the original statement which had been delivered to defendants by the bookkeeper for the plaintiff), and Exhibit E (the estimate of the amount of lumber to be used in the construction of the tipple, which was used as the basis for the original contract before the tipple was constructed).

■ The record discloses that neither plaintiff, nor defendant John Foderaro, were versed in the English language, and the trial court, being cognizant of this situation, permitted counsel on both sides to ask some leading questions on direct examination. We do not believe that the court thereby abused its discretion or showed partiality toward one side or the other.

■ The conversations between engineer Fisk and the defendant, John Foderaro, were properly excluded as hearsay after Fisk had testified that his only part in the affair was the drawing of the plans; that he was not employed to supervise construction or retained as a consulting engineer; that he knew nothing about any changes agreed upon between plaintiff and defendant after work started.

■ The testimony in regard to the defendants' profits

and regarding the shutdown of the mine was germane because of the counterclaim of $300 interposed by defendant, John Foderaro.

We have read the whole record and are of the opinion that it does not disclose any prejudicial error as to the defendant, John Foderaro. We believe it contains sufficient competent evidence upon which a jury could reasonably find in favor of the plaintiff and against the defendant, John Foderaro.

In the proceedings under review the wife of John Foderaro, appearing in the record as Mrs. John Foderaro and also as Carmela Foderaro, was joined as a defendant on the theory that she was a partner with her husband, and the adverse judgments entered in the justice of the peace court and the county court were entered against her as well as her husband. Counsel for the defense, at the conclusion of the plaintiff's testimony, moved that the jury be instructed to bring in a directed verdict in favor of Mrs. Foderaro for the reason that there was no evidence connecting her with any agreement, nor any evidence of any partnership between her and her husband. This motion was again presented at the close of all the evidence, but on both occasions was denied by the court. A study of the record convinces us that the motion should have been granted on the grounds stated. The testimony of both defendants was that John Foderaro was the owner of the Strawberry mine and that Mrs. Foderaro was not a partner with him in the business; that he was illiterate and could not write, and for that reason she drew all the bank checks issued in connection with the operation of the mine. The only evidence that plaintiff's counsel attempted to introduce on this point was by a question directed to plaintiff as to who made out the check making a partial payment on the contract. The answer was that it was signed by Mrs. Foderaro for payment on this work; whereupon counsel for the defendant objected to the question and answer, and moved that both be stricken.

This objection was sustained by the court, who directed the jury to disregard the question and answer. This leaves simply the testimony of both Mr. and Mrs. Foderaro denying that she was his partner, and from that state of the record we find no justification for holding Mrs. Foderaro liable under the contract, she not being a party to it.

The judgment is accordingly affirmed as to defendant, John Foderaro, and reversed as to defendant, Mrs. John Foderaro.